# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| ELSIE BENALLY; FERN BENALLY; LUCILLE BENALLY; NORMAN BENALLY, *Plaintiffs - Appellants*, v. UNITED STATES OFFICE OF NAVAJO AND HOPI INDIAN RELOCATION, an Administrative Agency of the United States, *Defendant - Appellee*. | No. 23-3978 D.C. No. 3:22-cv-08100-DLR ORDER |
| TONY GOLDTOOTH, *Plaintiff - Appellant*, v. UNITED STATES OFFICE OF NAVAJO AND HOPI INDIAN RELOCATION, *Defendant - Appellee*. | No. 23-4202 D.C. No. 3:22-cv-08120-DLR |

Filed October 1, 2025

Before: Richard A. Paez, Marsha S. Berzon, and John B. Owens, Circuit Judges.

## SUMMARY*

**Equal Access to Justice Act / Attorney's Fees and Costs**

The panel granted plaintiffs' motions for an award of attorney's fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412 ("EAJA").

Plaintiffs applied for relocation benefits under the Navajo-Hopi Settlement Act. The United States Office of Navajo and Hopi Indian Relocation ("ONHIR") denied their applications for relocation benefits, and an independent hearing officer affirmed the denial of benefits. Plaintiffs sought review in district court. The district court rejected their suits and granted summary judgment to the government. On appeal, this court reversed the district court's judgments and remanded to ONHIR for further proceedings. Plaintiffs moved for fees and costs under the EAJA.

The panel held that plaintiffs incurred fees with the meaning of the EAJA. The panel rejected ONHIR's argument that plaintiffs did not incur fees for purposes of the EAJA because they were not themselves responsible for

---

* This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

paying the fees—the Navajo Nation paid their attorney's fees, pursuant to a contractual agreement with private counsel to represent plaintiffs. The panel held that the contractual relationship between plaintiffs, their counsel, and the Navajo Nation, and whether that contract requires plaintiffs to remit the fees award to the Navajo Nation, does not preclude plaintiffs' entitlement to an order requiring the government to pay them, as prevailing parties, an attorney's fee award under the EAJA.

The panel held that ONHIR's denial of relocation benefits to plaintiffs was not substantially justified because ONHIR's decisions in the underlying merits cases were not supported by substantial evidence. Accordingly, the panel held that it need not determine whether the government's litigation position was substantially justified, and awarded plaintiffs fees and costs under the EAJA.

## ORDER

In 2006, Tony Goldtooth ("Goldtooth") applied for relocation benefits under the Navajo-Hopi Settlement Act (the "Settlement Act"), Pub. L. No. 93-531, 88 Stat. 1712 (1974). Between May 2009 and August 2010, Elsie, Fern, Lucille, and Norman Benally (the "Benallys") also applied for relocation benefits. The United States Office of Navajo and Hopi Indian Relocation ("ONHIR" or "the government") denied their applications. An independent hearing officer ("IHO") affirmed the denial of benefits. Goldtooth and the Benallys then, separately, filed suit in district court seeking judicial review of ONHIR's decisions. The district court rejected both Goldtooth's and the

Benallys' suits, granting summary judgment to the government in both cases.

On appeal, we reversed the judgments and remanded the cases to ONHIR for further proceedings before the IHO. *See Goldtooth v. Off. of Navajo & Hopi Indian Relocation*, No. 23-4202, 2024 WL 4866953 (9th Cir. Nov. 22, 2024); *Benally v. Off. of Navajo & Hopi Indian Relocation*, No. 23-3978, 2024 WL 4971965 (9th Cir. Dec. 4, 2024). Goldtooth and the Benallys now each move for an award of attorney's fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412 ("EAJA").[1]

The EAJA provides, in relevant part, that "[the] court shall award to a prevailing party other than the United States fees and other expenses . . . incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States . . . unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). ONHIR argues that we should deny the motions because (1) neither Goldtooth nor the Benallys "incurred" fees for purposes of the EAJA, and (2) the government's position in each case was substantially justified. We conclude that ONHIR's arguments lack merit. Because Goldtooth and the Benallys are otherwise eligible for an award of fees under the EAJA, we grant both motions for attorney's fees.

---

[1] Because these motions raise the same issues, we consolidate them for disposition.

# I.

To provide context for the motions, we briefly recount the background of these cases. Tony Goldtooth and siblings Elsie, Fern, Lucille, and Norman Benally applied to ONHIR for relocation benefits under the Settlement Act. ONHIR denied their applications. Goldtooth and the Benallys appealed the denial of benefits to an IHO. After conducting a hearing in Goldtooth's case and a consolidated hearing for the Benallys' cases, the IHO denied their applications.

Goldtooth sought judicial review of the agency's decision in the district court. Finding no error in the IHO's decision, the court granted summary judgment in favor of ONHIR. Goldtooth then appealed the district court's judgment to this court. We reversed and remanded the case to ONHIR for further proceedings. Specifically, we concluded that the IHO's adverse credibility determination relied on "contradictions [that] were based on mischaracterizations of the record" relating to the frequency of Goldtooth's returns to Hopi Partitioned Lands to assist his grandmother on the family homesite, and so was not supported by substantial evidence. *Goldtooth*, No. 23-4202, 2024 WL 4866953, at *1.

The Benallys collectively sought judicial review in the district court. The district court, again finding no error in the IHO's rulings, granted summary judgment in favor of ONHIR. They subsequently appealed to this court. As in Goldtooth's appeal, we reversed and remanded to the agency for further proceedings. We held that the IHO's adverse credibility findings for Elsie, Fern, Norman Benally, and

their mother, Mabel,[2] who testified on behalf of the siblings, were not supported by substantial evidence and were partly based on speculation and conjecture about the family's grazing activities on Hopi Partitioned Lands. *Benally*, No. 23-3978, 2024 WL 4971965, at *1.

After we reversed and remanded their respective cases, Goldtooth and the Benallys filed motions for attorney's fees under the EAJA. Goldtooth seeks $49,716.54 in fees and costs, and the Benallys seek $44,907.12 in fees and costs. The government does not dispute that Goldtooth and the Benallys are prevailing parties under the EAJA, or that they meet the statute's income requirement limiting eligible individuals to a net worth not exceeding $2,000,000. *See* 28 U.S.C. § 2412(d)(1)(A), (d)(2)(B). Nor does the government contest the amount of fees that Plaintiffs seek. We therefore discuss only whether Plaintiffs incurred attorney's fees under the EAJA and whether the government's position in each case was substantially justified.

## II.

"For the court to award attorney's fees and costs pursuant to the EAJA, it must be shown that (1) the plaintiff is the prevailing party; (2) the government has not met its burden of showing that its positions were substantially justified or that special circumstances make an award unjust; and (3) the requested attorney's fees and costs are reasonable." *Perez-Arellano v. Smith*, 279 F.3d 791, 793 (9th Cir. 2002) (citing 28 U.S.C. § 2412(d)(1)(A)). The

---

[2] Lucille Benally did not testify at the consolidated hearing and relied on the testimony of her mother and siblings.

plaintiff also must have "incurred" the fees in the civil action. 28 U.S.C. § 2412(d)(1)(A).

## A.

ONHIR first argues that Plaintiffs did not incur fees for purposes of the EAJA because they were not themselves responsible for paying the fees. Instead, the Navajo Nation paid their attorney's fees, pursuant to a contractual agreement with private counsel to represent Plaintiffs. The fee arrangements in Goldtooth's and the Benallys' cases were identical: their counsel did not bill them for their services, and they did not pay any attorney's fees or costs. Plaintiffs, however, agreed to remit to the Navajo Nation any attorney's fees that they recovered in their litigation.

It is undisputed that Plaintiffs' attorneys were paid through the Navajo-Hopi Legal Services Program, which operates within the Navajo Nation Department of Justice to aid tribal members in pursuing claims for relocation benefits. ONHIR argues that given this fee arrangement, Goldtooth and the Benallys did not "incur[]" fees. We disagree.

The EAJA does not define "incurred" in 28 U.S.C. § 2412(d)(1)(A). We have construed the term "incurred" in analogous fee-shifting statutory provisions to permit an award where the prevailing party was represented by counsel either on a contingent fee basis or pro bono—that is, with no fees due from the client. Although the fee arrangements in those cases are not identical to the arrangement we consider here, we conclude that the term "incurred" in § 2412(d)(1)(A) applies in this circumstance, as in those, to a plaintiff's relationship with attorneys representing him or her in court even though the plaintiff has no obligation to pay the attorney's fees absent a fee award.

For example, in *Morrison v. Commissioner*, 565 F.3d 658 (9th Cir. 2009), we interpreted an analogous fee-shifting provision in the Tax Code, 26 U.S.C. § 7430(a). That provision provides that a prevailing party in a civil tax proceeding "may be awarded a judgment or a settlement for (1) reasonable administrative costs *incurred* in connection with such administrative proceeding within the Internal Revenue Service, and (2) reasonable litigation costs *incurred* in connection with such court proceeding." 26 U.S.C. § 7430(a) (emphasis added). In *Morrison*, the plaintiff successfully challenged a notice of tax deficiency issued by the Internal Revenue Service ("IRS") and then filed a motion for attorney's fees in the United States Tax Court. 565 F.3d at 659. The plaintiff's former employer also filed a motion for attorney's fees, after having paid all the plaintiff's fees under an arrangement in which the plaintiff would reimburse if he successfully recovered fees under § 7430(a). The Tax Court granted the employer's motion and denied the plaintiff's motion on the basis that the plaintiff did not "incur" fees because his former employer paid them on his behalf. *Id.* at 660. We reversed and held that, where a third party initially pays the fees and costs of litigation, "a taxpayer can 'incur' attorneys' fees under § 7430 even if he assumes only a contingent obligation to repay them." *Id.* at 663.

In doing so, we considered that other courts repeatedly have awarded attorney's fees to prevailing parties represented by pro bono counsel pursuant to similar fee-shifting provisions in other statutes. *See id.* at 664 (collecting cases). A major concern addressed in these cases and in *Morrison* was the risk that individuals would not be able to vindicate their rights if they did not have the financial resources to do so, and that counsel would lack incentive to

assist them without the assurance that fees may be recovered after litigating meritorious claims. *Id.* at 664-66. We also noted that, by interpreting "incurred" this way, we "avoid[] creating an incentive for the IRS to deny meritorious claims." *Id.* at 666.

We reached a similar conclusion in *Cuellar v. Joyce*, 603 F.3d 1142 (9th Cir. 2010). There, the plaintiff, with the aid of pro bono counsel, successfully petitioned for the return of her child abducted by the child's other parent pursuant to the Hague Convention on the Civil Aspects of International Child Abduction,[3] and subsequently moved for an award of attorney's fees and costs. *Id.* at 1143. The applicable fee-shifting statute provided that "[a]ny court ordering the return of a child" pursuant to a civil action brought under the Hague Convention "shall order the respondent to pay necessary expenses *incurred* by or on behalf of the petitioner," including court costs and legal fees, "unless the respondent establishes that such order would be clearly inappropriate." 42 U.S.C. § 11607(b)(3) (current version at 22 U.S.C. § 9007(b)(3)) (emphasis added). We granted the motion, rejecting the respondent's argument that the order would be clearly inappropriate because the plaintiff had not "incurred" fees as she was represented pro bono. *Cuellar*, 603 F.3d at 1143. We noted that "[f]ee awards serve in part to deter frivolous litigation, and denying fees in this case would encourage abducting parents to engage in improper delaying tactics whenever the petitioning parent is represented by pro bono counsel." *Id.* (citing *Morrison*, 565 F.3d at 664). We also considered, as in *Morrison*, whether denying fees to a plaintiff represented by pro bono counsel would frustrate the purpose of the relevant statute. We concluded that it would,

---

[3] Oct. 25, 1980, T.I.A.S. No. 11,670, 1343 U.N.T.S. 49.

observing that denying fees would "undermine the Convention's policy of effective and speedy return of abducted children," and that "[a]n award of fees in this case will encourage other lawyers to advance legal services to impecunious clients in the expectation that they will be compensated if successful." *Id.*

Moreover, whether plaintiffs are represented by private counsel or non-profit legal services organizations has no bearing on their entitlement to attorney's fees under the EAJA. Here, the Navajo Nation arranged for legal services through the Navajo-Hopi Legal Services Program by contracting with private counsel to represent Goldtooth and the Benallys in challenging ONHIR's denial of relocation benefits. The attorney's fee arrangement in Goldtooth's and the Benallys' cases is analogous to circumstances where a non-profit legal services organization provides legal representation to persons who cannot afford the costs of such representation, but nonetheless are entitled to an award of fees as prevailing parties.

In *Dennis v. Chang*, 611 F.2d 1302 (9th Cir. 1980), one such case, we affirmed the district court's award of attorney's fees to prevailing plaintiffs represented by a non-profit public interest organization in a civil rights action against Hawai'i state officials under 42 U.S.C. § 1983. Having prevailed, the plaintiffs' attorneys moved for a fees award pursuant to the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988. *Id.* at 1304. Section 1988 authorizes a court to "allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs" associated with a civil action under § 1983. 42 U.S.C. § 1988(b). We held in *Dennis* that when determining whether an award was warranted, "the nature or source of plaintiffs' counsel's funding" is neither material to

plaintiffs' entitlement to an award of attorney's fees nor an obstruction to the purpose of § 1988.  *Dennis*, 611 F.2d at 1306.

In affirming the district court's fee award in *Dennis*, we specifically noted that "[a]n award of attorneys' fees . . . is not to be denied because counsel provided its legal representation without charge," 611 F.2d at 1304 n.4, and that "Congress has made it clear that legal service organizations . . . are entitled to attorneys' fees on the same basis as private counsel."  *Id.* at 1305 n.7.  Because the "purpose in authorizing fee awards was to encourage compliance with and enforcement of the civil rights laws," we concluded that "[t]he Fees Awards Act must be liberally construed to achieve these ends."  *Id.* at 1306.

The considerations in *Morrison*, *Cuellar*, and *Dennis* apply with equal force to the EAJA.  As we recognized in *Morrison*, the "reasoning employed by the courts under the attorney's fees provision of the Equal Access to Justice Act applies equally to review under section 7430 [of the Tax Code]."  *Morrison*, 565 F.3d at 662 n.4 (quoting *Huffman v. Comm'r*, 978 F.2d 1139, 1143 (9th Cir. 1992)).  Further, "[t]he clearly stated objective of the EAJA is to eliminate financial disincentives for those who would defend against unjustified governmental action and thereby to deter the unreasonable exercise of Government authority."  *Ardestani v. I.N.S.*, 502 U.S. 129, 138 (1991) (citation omitted); *see also Comm'r v. Jean*, 496 U.S. 154, 164-65 (1990) ("The Government's general interest in protecting the federal fisc is subordinate to the specific statutory goals of encouraging private parties to vindicate their rights . . .").

Goldtooth and the Benallys were represented by private counsel retained through the Navajo-Hopi Legal Services

Program, which is operated by the Navajo Nation. The principles we recognized in *Dennis* apply here. Preserving the availability of an attorney's fees award similarly encourages the Navajo Nation to contract with private counsel to represent plaintiffs with meritorious challenges to ONHIR's denial of relocation benefits. Thus, we conclude that Goldtooth and the Benallys "incurred" fees under the EAJA in a manner similar to that in which the plaintiffs in *Morrison*, *Cuellar*, and *Dennis* incurred fees.

This position is consistent with that of several of our sister circuits which have held that prevailing parties under the EAJA are entitled to attorney's fees when represented on a contingent fee basis or pro bono. In *Cornella v. Schweiker*, 728 F.2d 978 (8th Cir. 1984), the Eighth Circuit reversed a district court's denial of attorney's fees under the EAJA and held that pro bono representation does not preclude a finding that the plaintiff incurred fees for purposes of the Act. *See id.* at 986-87. The court relied largely on the legislative history of the EAJA, determining that Congress specifically contemplated the availability of fee awards to pro bono counsel, and did not intend to base awards under the EAJA on the "actual fee arrangements between the attorney and client." *Id.* at 986. The court also determined that interpreting the EAJA to bar awards based on pro bono representation would "effectively reduc[e] access to the judiciary for indigent individuals," which "surely does not further the goals of the EAJA." *Id.* at 986-87.

The Sixth Circuit reached the same conclusion in *Turner v. Commissioner*, 680 F.3d 721 (6th Cir. 2012), but with respect to contingency representation under the EAJA. Reversing the district court's denial of several plaintiffs' attorney's fees motions after they prevailed in their actions challenging the government's denial of Social Security

benefits, the court held that "the existence of an unsatisfied contingency or pro bono representation agreement does not preclude a fee award, even where the statute limits fees to those 'incurred' by the plaintiff in that action." *Id.* at 724 (citing *Ed A. Wilson, Inc. v. Gen. Servs. Admin.*, 126 F.3d 1406, 1409 (Fed. Cir. 1997)). Instead, "an express or implied legal obligation to pay over such an award to their legal representatives" satisfied the requirement that a plaintiff "incurred" fees pursuant to the EAJA. *Id.* at 725. In so holding, the court noted that precluding fee awards for contingency representation would significantly curtail challenges to denials of Social Security benefits by individuals with meritorious claims and would undermine one of the EAJA's objectives of eliminating financial deterrents to civil suits. *See id.* at 724. These concerns are particularly pertinent for Social Security cases, *Turner* noted, as contingency fee arrangements predominate in such cases. *Id.* The contingent nature of the attorney's fee arrangement in Goldtooth's and the Benallys' cases is not significantly different from the arrangements in *Cornella* and *Turner*. The reasoning and result in those cases therefore further support our determination that Plaintiffs incurred attorney's fees for purposes of the EAJA.

ONHIR's reliance on *Love v. Reilly*, 924. F.2d 1492 (9th Cir. 1991), to argue that only the Navajo Nation "incurred" fees under the EAJA is misguided. *Love* concerned whether a plaintiff organization could obtain attorney's fees after the organization prevailed with other plaintiffs in an underlying suit against a federal agency. In concluding that the organization was entitled to attorney's fees, we rejected the government's argument that the organization was required to prove that each of its members, including the co-plaintiffs, individually met the eligibility requirements for an

attorney's fees award under the EAJA and that, accordingly, each of them was a "real party in interest in the fee litigation." *Love*, 924 F.2d at 1494. Here, where the Navajo Nation was not a party to the litigation, and Goldtooth and the Benallys were themselves the prevailing parties in their respective cases and seek attorney's fees in that capacity, *Love* is inapposite.[4] The problem of the so-called "free rider" plaintiff considered and rejected in *Love* – where "a plaintiff who is ineligible for fees under the EAJA . . . ends up paying no fees because the other, eligible plaintiff pays them all through the court-awarded fees" – does not exist here either. *Id.* at 1495.

Furthermore, there is no reason to invoke the real party in interest concept in this case. ONHIR relies on the proposition in *Love* that "[t]he members of the [organization] would be the real party in interest in the fee litigation only if they were liable for the [organization's] attorney's fees." *Love*, 924 F.2d at 1494. But *Love* and the District of Columbia Circuit case upon which it relied concerned individual plaintiffs litigating their claims alongside an association as a co-plaintiff. *Love*, 924 F.2d at 1494-95 (citing *Unification Church v. I.N.S.*, 762 F.2d 1077 (D.C. Cir. 1985)). With no similar arrangement here among Goldtooth and the Benallys, and no participation by the Navajo Nation as a party in their cases, we need not inquire whether there are real parties in interest other than the plaintiffs themselves. *See Am. Ass'n of Retired Pers. v. E.E.O.C.*, 873 F.2d 402, 406-07 (D.C. Cir. 1989) (holding that the central concern in assessing real parties in interest for EAJA cases is whether a "fee arrangement among the

---

[4] We therefore do not address ONHIR's arguments that the Navajo Nation is ineligible for an attorney's fees award under the EAJA.

plaintiffs" exists (emphasis deleted)); *see also id.* at 406 (noting that a plaintiff's retainer of pro bono or legal aid counsel defeats suspicion that she is using another plaintiff to obtain otherwise unavailable EAJA attorney's fees (citing *Unification Church*, 762 F.2d at 1083)).

### B.

In a slight variation on the "incurred" argument already discussed, ONHIR argues that Goldtooth and the Benallys are ineligible for fees because the statute provides for awarding fees to the prevailing party, yet the plaintiffs have "no stake in whether fees are awarded." The government suggests that only the Navajo Nation has such a stake because, under the attorney's fee arrangement here, the Navajo Nation is ultimately responsible for paying the costs of counsel, and Goldtooth and the Benallys in turn agreed to assign payment of any attorney's fees awards to the Navajo Nation.

As discussed above with respect to Plaintiffs' contractual relationship with counsel, whether the Navajo Nation is required to pay the fees to counsel is irrelevant to our determination that Goldtooth and the Benallys are themselves entitled to a fee award. "It is well-settled that an award of attorneys fees under [the] EAJA is not necessarily contingent upon an obligation to pay counsel . . . The presence of an attorney-client relationship suffices to entitle prevailing litigants to receive fee awards." *Nadarajah v. Holder*, 569 F.3d 906, 916 (9th Cir. 2009) (citation modified) (quoting *Ed A. Wilson, Inc.*, 126 F.3d at 1409). "The fact that the statute awards to the prevailing party fees in which her attorney may have a beneficial interest or a contractual right does not establish that the statute 'awards' the fees directly to the attorney." *Astrue v. Ratliff*, 560 U.S.

586, 593 (2010).  Instead, "the statute's plain text does the opposite – it 'awards' the fees to the litigant."  *Id.*

Thus, the contractual relationship between Plaintiffs, their counsel, and the Navajo Nation, and whether that contract requires the plaintiffs to remit the fees award to the Navajo Nation, does not preclude Plaintiffs' entitlement to an order requiring the government to pay them, as prevailing parties, an attorney's fee award under the EAJA.  *Cf. Shealey v. Wilkie*, 946 F.3d 1294, 1297-98 (Fed. Cir. 2020) (holding that attorneys who sought to recover fees and costs under the EAJA from their client lacked standing because they lacked any "substantive rights" to the award).  Whether the fee award is assigned to an organization responsible for paying the fees does not matter.

For the above reasons, we hold that as Goldtooth and the Benallys incurred fees within the meaning of the EAJA, they are eligible for an attorney's fees award on that basis.

## III.

We turn next to whether the government's positions in the Goldtooth and Benally litigation and ONHIR's underlying denial of their applications for benefits were substantially justified.  *See* 28 U.S.C. § 2412(d)(1).  "It is the government's burden to show that its position was substantially justified."  *Meier v. Colvin*, 727 F.3d 867, 870 (9th Cir. 2013) (citing *Gutierrez v. Barnhart*, 274 F.3d 1255, 1258 (9th Cir. 2001)).  For the purposes of the EAJA, the government's "position" includes "both the government's litigation position and the 'action or failure to act by the agency upon which the civil action is based.'"  *Ibrahim v. U.S. Dep't of Homeland Sec.*, 912 F.3d 1147, 1168 (9th Cir. 2019) (citation omitted).  "Substantial justification means 'justified in substance or in the main – that is, justified to a

degree that could satisfy a reasonable person.'" *Meier*, 727 F.3d at 870 (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)).  Thus, the government's position "must have a reasonable basis both in law and fact."  *Id.* (citation modified).

While ONHIR correctly states that the EAJA contemplates "that the government [may] lose on the merits and nevertheless be found to have taken a substantially justified position," that proposition has no force here.  Our conclusion on the merits was that ONHIR's decisions were not based on substantial evidence.  We have repeatedly held that "it will be only a 'decidedly unusual case in which there is substantial justification under the EAJA even though the agency's decision was reversed as lacking in reasonable, substantial and probative evidence in the record.'" *Thangaraja v. Gonzales*, 428 F.3d 870, 874 (9th Cir. 2005) (quoting *Al-Harbi v. I.N.S.*, 284 F.3d 1080, 1085 (9th Cir. 2002)).

ONHIR's denial of relocation benefits to Goldtooth and to the Benallys was not substantially justified because, in each case, its decision was not supported by substantial evidence.  In Goldtooth's appeal, we reversed the grant of summary judgment to the government because we determined that the IHO mischaracterized the record in discrediting certain testimony by Goldtooth. *See Goldtooth*, No. 23-4202, 2024 WL 4866953, at \*1-2.  In the Benallys' appeal, we similarly reversed the district court's grant of summary judgment to the government after concluding that the IHO's adverse credibility findings against Elsie, Fern, Norman, and their mother, Mabel Benally, were based on speculation and conjecture instead of record evidence. *Benally*, No. 23-3978, 2024 WL 4971965, at \*1. Accordingly, we remanded both cases to ONHIR for further

proceedings because they failed our review for substantial evidence. *See* 5 U.S.C. § 706(2).

Because ONHIR's decisions in the underlying merits cases were not supported by substantial evidence and therefore were not substantially justified, we need not determine whether the government's litigation position was substantially justified. *See Meier*, 727 F.3d at 872-73 (holding that all of the government's positions must be substantially justified to avoid an award under the EAJA). The government argues that its litigation position was justified because the evidence relied on by the IHO to deny relocation benefits to Goldtooth and the Benallys "could satisfy a reasonable person." *See Pierce*, 487 U.S. at 565. However, "[g]iven the significant similarity between this standard and the substantial justification standard . . . this court and other circuits have held that a 'holding that the agency's decision was unsupported by substantial evidence is a strong indication that the 'position of the United States' was not substantially justified.'" *Meier*, 727 F.3d at 872 (citation modified) (quoting *Thangaraja*, 428 F.3d at 874). The government has not demonstrated, or even argued, that we are confronted with "decidedly unusual case[s]" that would warrant a finding that the government's position was substantially justified. Thus, the government's attempt to relitigate the merits of Goldtooth's and the Benallys' underlying cases is unconvincing.

For these reasons, we conclude that the government's positions in these cases were not substantially justified to defeat Goldtooth's and the Benallys' entitlement to an attorney's fee award under the EAJA.

## IV.

Because Tony Goldtooth and Elsie, Fern, Lucille, and Norman Benally are the prevailing parties in their respective cases, ONHIR's position was not substantially justified, and circumstances do not make an award of fees unjust, we conclude that they are entitled to an award of attorney's fees under the EAJA at the hourly rate of fees allowed by that statute.

Goldtooth's motion for attorney's fees and costs under the EAJA is granted in the requested amount of $49,716.54. The Benallys' motion for attorney's fees and costs under the EAJA is granted in the requested amount of $44,907.12.

**In Case No. 23-4202, Plaintiff Tony Goldtooth's motion for an award of attorney's fees and costs in the amount of $49,716.54 is GRANTED.**

**In Case No. 23-3978, Plaintiffs Elsie, Fern, Lucille, and Norman Benally's motion for an award of attorney's fees and costs in the amount of $44,907.12 is GRANTED.**